UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WANDA PATTERSON, parent and next friend of A.P., and A.P., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-251 (RMC) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

Plaintiffs Wanda Patterson and her minor child A.P. filed this appeal of a Hearing Officer Determination, alleging that Defendant District of Columbia denied A.P. a free appropriate public education in violation of the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 *et seq.*, due to the District's failure to provide an appropriate transition plan. Because the District subsequently did provide a proper transition plan, Plaintiffs' appeal has become moot. Accordingly, the District's motion for summary judgment will be granted and Plaintiffs' cross motion will be denied.

### I. FACTS

**A. Statutory Framework**

The Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C.

1

§ 1400(d)(1)(A). In designing a free appropriate public education ("FAPE") for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate in a "multi-disciplinary team" to develop an individualized educational program ("IEP") to meet the child's unique needs. *See id.* § 1414(d)(1)(B). Local school officials utilize the IEP to assess the student's needs and assign a commensurate learning environment. *See id.* § 1414(d)(1)(A).

While the District of Columbia is required to provide disabled students a FAPE, it is not required to, and does not, guarantee any particular outcome or any particular level of academic success. *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If the parent objects to the identification, evaluation, or educational placement of a disabled child, or whether she is receiving a FAPE, 20 U.S.C. § 1415(b)(6), the parent may seek an "impartial due process hearing" before a D.C. Hearing Officer, who issues a Hearing Officer Determination ("HOD"). *Id.* § 1415(f)(1)(A). If the parent is dissatisfied with the HOD, she may appeal to a state court or a federal district court. *See id.* § 1415(i)(2)(A).

### B. Facts

A.P. is a sixteen-year-old student who is eligible for special education services. In August 2011 after four psychiatric hospitalizations, Ms. Patterson placed A.P. at a residential school located in Georgia named Ackerman Devereux Academy. Although A.P. was placed in Georgia, the District of Columbia continued to take responsibility for A.P.'s special education services.

On January 24, 2012, a multidisciplinary team revised A.P.'s IEP. The revised IEP provided for specialized instruction for 30 hours per week and counseling for three hours per

week (both in a special education setting) and a behavior intervention plan. AR[1] at 11. Because A.P. was going to turn sixteen in the year the revised IEP was implemented, the IEP was required to include a transition plan, a plan for transition out of high school. *See* 20 U.S.C. § 1414(d)(1)(A)(i)(VIII); 34 C.F.R. § 300.43. Thus, the IEP included such a transition plan (2012 Transition Plan) indicating that A.P. "will discuss educational choices with the guidance counselor or other school personnel such as [a] special education coordinator," AR at 46; "will explore occupational choices including those choices in the area of law," *id*. at 47; and "will discuss the importance of vocational rehabilitation with [a] special education coordinator," *id*. A.P. was given an assessment called "Career Cruising," which resulted in a ranked list of careers that interested A.P., but did not result in any particular education or career goal.

A.P. left Devereux in August 2012 and began attending Coolidge Senior High School in the District of Columbia. In September 2012, Plaintiffs filed a due process complaint alleging, *inter alia*, that the IEP was inappropriate because the District failed to conduct a vocational assessment and the 2012 Transition Plan was improper. An administrative hearing was held on November 16, 2012, and the Hearing Officer rendered a decision on November 29, 2012. *Id.* at 5-19.

The Hearing Officer found that the IEP lacked "appropriate measurable post-secondary goals based on a transition assessment and . . . the resulting transition services may not be appropriate." *Id*. at 16. "The purported postsecondary goals are not postsecondary goals at all but directions about what the Student should do during her secondary school years," noted the Hearing Officer. *Id*. The Hearing Officer directed the District to revise the 2012 Transition Plan. *Id*. Nonetheless, the Hearing Officer found that A.P. had not been denied a FAPE:

---

[1] The Administrative Record (AR), pages 1-515, is filed on ECF at docket 7.

"[T]here is no evidence the Student has suffered educationally as a result of this problem—she has been doing very well academically and functionally." *Id*.

On January 16, 2013, the District replaced the 2012 Transition Plan with the 2013 Transition Plan. Mot. for Summ. J. [Dkt 9], Ex. 1 (Jan. 2013 IEP). A.P. took the Brigance Educational Interest Assessment and Brigance Career Choice Assessment, which together revealed that A.P. "understands the importance of graduating from high school;" "plans to go to college in order to become a judge or parole officer;" and "plans to go to college to study criminal justice." Jan. 2013 IEP at 12. In order to reach these identified goals, the 2013 Transition Plan provides that A.P. "will locate the sources that can provide her with helpful materials and information about her career choice," *id*., and that she will complete 100 hours of community service, using such service as an opportunity to "explore and research her career interest," *id*. at 13.

On February 26, 2013, Plaintiffs filed this suit appealing the HOD and asserting that the District failed to provide a FAPE because the 2012 Transition Plan was inappropriate. The District asserts that the 2013 Transition Plan moots this case, and even if it did not, the initial 2012 Transition Plan is not a substantive denial of a FAPE. The parties have filed cross motions for summary judgment.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In evaluating a hearing officer's decision in an IDEA case such as this one, a court reviews the administrative record, may hear additional

evidence, and bases its decision on the preponderance of the evidence, granting such relief as deemed appropriate. 20 U.S.C. § 1415(i)(2)(C). "Where, as here, neither party seeks to present additional evidence, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *Parker v. Friendship Edison Public Charter Sch.*, 577 F. Supp. 2d. 68, 72 (D.D.C. 2008) (internal quotation marks and citation omitted).

The burden of proof is with the party challenging the administrative determination, *see Schaffer v. Weast*, 546 U.S. 49, 48 (2005), who must "at least take on the burden of persuading the court that the hearing officer was wrong," *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (citation and quotation marks omitted). The court gives "due weight" to the decision of the hearing officer and does not substitute its own view of sound educational policy for that of the hearing officer. *See Rowley*, 458 U.S. at 206.

### III. ANALYSIS

The District's issuance of the 2013 Transition Plan in compliance with IDEA requirements renders this case moot. Because the U.S. Constitution requires federal courts to decide only "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), the mootness doctrine requires courts to refrain from deciding a case "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citation omitted). A case is moot if a defendant can demonstrate that two conditions have been met: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong will be repeated. *Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). When both conditions are satisfied, the case is moot because

5

neither party has a legally cognizable interest in the final determination of the underlying facts and law.

This case is similar to *Turner v District of Columbia*, Civ. No. 12-1943, 2013 WL 3324358 (D.D.C. July 2, 2013), where the plaintiff also alleged denial of a FAPE due to an inadequate transition plan. When the plaintiff complained that the transition plan did not include vocational exploration, the District revised the IEP to include a new transition plan that addressed exploration of possible vocations. Because the transition plan had been revised to address the plaintiff's objection, the district court dismissed the case as moot. *Id*. at *6-7.

Plaintiffs here baldly assert that this case falls under the "capable of repetition yet evading review" exception to the mootness doctrine. This exception applies where: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subject to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Plaintiffs fail to support their argument with any facts. The "challenged action" is the 2012 Transition Plan—which has been superseded and corrected by the issuance of the 2013 Transition Plan. Plaintiffs do not present any evidence showing that it can be reasonably expected that A.P. will be subject to an inadequate transition plan in the future.

Even if this case presented a live controversy, the Court would enter judgment in favor of the District. Plaintiffs have not demonstrated that A.P. was denied a FAPE because the temporary imposition of the inadequate 2012 Transition Plan was a mere procedural violation that did not affect A.P.'s substantive rights. "An IDEA claim is viable only if those procedural violations affected the student's *substantive* rights." *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis in original); *accord C.M. v. Bd. of Educ.*, 128 F. App'x 876,

881 (3d Cir. 2005) ("[O]nly those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive patents of their participation rights are actionable."); *M.M. ex rel. D.M. v. Sch. Dist.*, 303 F.3d 523, 533-34 (4th Cir. 2002) ("If a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligation."); *see also* 34 C.F.R. § 300.513(a)(1) (determination of whether a child received a FAPE must be based on substantive grounds). Courts have held that where the IEP as a whole confers an educational benefit, an inadequate transition plan does not amount to denial of a FAPE. *See, e.g.*, *Sinan L. v. Sch. Dist. of Philadelphia*, 293 F. App'x 912, 914-15 (3d Cir. Sept. 24, 2008) (transition plan that was "left largely blank" did not violate IDEA); *A.D. v. New York City Dep't of Educ.*, Civ. No. 12-2673, 2013 WL 1155570, at *11 (S.D.N.Y. Mar. 19, 2013) (a "sparse" transition plan did not invalidate the IEP or amount to denial of a FAPE).

The District points out that the inadequate 2012 Transition Plan was only in place for one year before it was corrected and that it has not resulted in any deprivation of educational opportunity. Plaintiffs insist that A.P. was substantively harmed by the 2012 Transition Plan because she spent an entire year without a proper plan and that the harm *will* be revealed in the future. Plaintiffs rely on the testimony of Lisa Debeauville, A.P.'s educational advocate, who testified as follows:

> Q. And in your opinion as an advocate do you think she could benefit from a vocational assessment?
>
> A. Absolutely. She needs one very much, very urgently. Because, again, a true assessment doesn't identify interest, it identifies your own capabilities realistically. That's the point of postsecondary planning. Because we don't—because in the law, you know, obviously, they don't want kids to graduate with unrealistic hopes and expectation or just go to nowhere and nothing, because *typically outcomes can be very poor*. And vocationally there is

7

> usually under-employment, unemployment, lack of higher education. *There could be lifetime [poverty], lifetime mental illness, all kinds of negative outcomes are associated*. So that's geared to prevent that. So it's something you take very seriously.

AR at 334 (emphasis added). Ms. Debeauville merely speculated that A.P. would be harmed, as evidenced by the conditional language used—"outcomes *can be* very poor" and "[t]here *could be* lifetime [poverty], lifetime mental illness." The Hearing Officer determined that the District was required to provide a proper transition plan, but there was no evidence that A.P. had suffered educationally during the time that the 2012 Transition Plan was in place. AR at 16. This Court agrees. Plaintiffs have not shown that the 2012 Transition Plan, though inadequate, actually caused A.P. any substantive harm or loss of educational opportunity before it was replaced. Accordingly, summary judgment will be granted in favor of the District.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Plaintiffs' Motion for Summary Judgment [Dkt. 8] and will grant the District of Columbia's Motion for Summary Judgment [Dkt. 9]. Judgment will be entered in favor of the District of Columbia. A memorializing Order accompanies this Opinion.

Date: September 4, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge
